**STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS**

**PROVIDENCE, SC.** **SUPREME COURT**

**STATE OF RHODE ISLAND**

**v.** **No. 2002-690 C.A.**
**(P2-2001-0769A)**

**NOBERTO BOLARINHO**

---

**On Appeal From a Judgment of Conviction**
**Entered in the Providence County Superior Court**

---

# BRIEF OF THE DEFENDANT/APPELLANT

Appellate Division
100 North Main Street
Providence, RI 02903
(401) 222-1510

# TABLE OF CONTENTS


INDEX OF AUTHORITIES .................... i

STATEMENT OF THE CASE .................... 1

STATEMENT OF FACTS .................... 3

ARGUMENT

I. THE MULTIPLE PUNISHMENTS IMPOSED UPON NORBERTO BOLARINHO ON TWO COUNTS OF FELONY ASSAULT FOR THE SAME INCIDENT OF ASSAULT, WAS IMPROPER UNDER THE FELONY ASSAULT STATUTE AND VIOLATED MR. BOLARINHO'S STATE AND FEDERAL CONSTITUTIONAL PROTECTIONS AGAINST DOUBLE JEOPARDY. U.S. CONST. AMEND. V; R.I. CONST. ART. I, SECTION 7 .................... 5

A. The Felony Assault Statute Does Not Contemplate Multiple Punishments For A Single Assault .................... 7

B. In The Absence Of Specific Legislative Authorization Of Multiple Punishments For A Single Criminal Act, Such Punishments Cannot Be Imposed Without Violating The Constitutional Protection Against Double Jeopardy .................... 9

C. An Assault Which Results In Serious Bodily Injury Is, By Definition, An Assault With A Dangerous Weapon .................... 11

II. THE STATE'S EVIDENCE THAT THE VICTIM SUSTAINED SERIOUS BODILY INJURY WAS INSUFFICIENT AS A MATTER OF LAW TO CONSTITUTE PROOF BEYOND A REASONABLE DOUBT, THEREFORE THE TRIAL JUSTICE ERRED IN DENYING MR. BOLARINHO'S MOTION TO DISMISS THE CHARGE .................... 18

A. The State Did Not Offer Evidence Sufficient To Prove That The Condition Of Edward Martin's Wrist Constituted "Serious Bodily Injury" Within The Meaning Of The Statute .................... 19

B. The State Failed To Present Legally Sufficient Evidence That The Wrist Fracture Was Caused By The Defendant .................... 22

C. The Evidence Presented To Prove That Mr. Bolarinho Caused Serious Bodily Injury To Edward Martin Was Not Credible ..... 23

CONCLUSION ..... 26

CERTIFICATE OF SERVICE ..... 27

# INDEX OF AUTHORITIES

## CONSTITUTIONS, STATUTES AND RULES

U.S. Const. Amend. V .......... 5

R.I. Const. Art. I, Section 7 .......... 5

R.I. Gen . Laws Section 11-5-2(a) (1982) .......... 5

R.I. Gen. Laws Section 11-5-2 .......... 18n

R.I. Gen. Laws Section 11-37-2 .......... 7

Michigan Revised Criminal Code 135 .......... 20n

New York Revised Penal Law section 10.00 .......... 20n

Proposed New Federal Criminal Code section 1.09 .......... 21n

Proposed Revision Texas Penal Code section 1.07 .......... 21n

## UNITED STATES SUPREME COURT

*Ball v. United States*, 470 U.S. 856 (1985) .......... 10

*Blockburger v. United States*, 284 U.S. 399 (1932) .......... 7, 8, 9, 15

*Brown v. Ohio*, 432 U.S. 169 .......... 16

*In re Winship*, 397 U.S. 358, 90 S.Ct. 1068 (1970) .......... 18

*Jones v. Thomas*, 491 U.S. 376 (1988) .......... 5

*Missouri v. Hunter*, 459 U.S. 359 (1983) .......... 9, 10

*Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) .......... 18

## RHODE ISLAND CASES

*State v. Barnes*, 559 A.2d 136 (R.I. 1989) .......... 11

*State v. Burgess*, 465 A.2d 204 (R.I. 1983) ........ 11

*State v. Gore*, 820 A.2d 978 (R.I. 2003) ........ 6

*State v. McKone*, 673 A.2d 1068 (R.I. 1996) ........ 23

*State v. Zangrilli*, 440 A.2d 710 (R.I. 1982) ........ 5, 6, 12, 13

OTHER STATE CASES

*Anderson v. State*, 686 So.2d 378 (Ala.Cr.App. 1994) ........ 21

*Clift v. Kentucky*, 2003 Ky. App. LEXIS 89 (May 2, 2003) ........ 21

*Commonwealth v. Rumkin*, 773 N.E.2d 988, 55 Mass. App. 635 (2002) ........ 14n

*DCX, Inc. v. District of Columbia Taxicab Commission*, 705 A.2d 1096 (D.C. 1998) ........ 8

*Estep v. State*, 11 Okl.Cr. 103 (1914) ........ 15

*Ex parte Birl*, 545 S.W.2d 169 (Tex. Crim. App. 1977) ........ 14

*Ex parte Vaughn*, 495 So.2d 83 (Ala. 1986) ........ 21

*Gardner v. State*, 689 A.2d 610 (Md. 1997) ........ 9

*Glymph v. United States*, 490 A.2d 1157 (D.C. 1985) ........ 15

*Goans v. State*, 465 So.2d 482 (Ala. 1986) ........ 20

*Gray v. United States*, 544 A.2d 1255 (D.C. 1988) ........ 15

*Grider v. State*, 766 So.2d 189 (Ala.Cr.App. 1999) ........ 20

*Holbrook v. State*, 772 A.2d 1240 (Md. 2001) ........ 9

*Hollis v. State*, 417 So.2d 617 (Ala.Crim.App. 1982) ........ 13

*In re T.H.B. Appellant*, 670 A.2d 895 (D.C. App. 1996) ........ 15

*Kirkpatrick v. State*, 747 S.W.2d 521 (Tex.Ct.App. 1988) ........ 13

*Montana v. Andrews*, 907 P.2d 967 (Mont. 1995) ........ 20

*Owens v. United States*, 497 A.2d 1086 (D.C. 1985), *cert denied*, 474 U.S. 1086, 88 L.Ed.2d 900, 106 S.Ct. 861 (1986) ............ 15

*People v. Berner*, 42 Colo. App. 520, 600 P.2d 112 (1979) ............ 14

*People v. Brengard*, 191 N.E. 850 (N.Y. 1934) ............ 23

*People v. Nieves*, 526 NYS2d 954 (NY 1988) ............ 20

*People v. Santos*, 556 NYS2d 376 (NY 1990) ............ 19

*Red Bank Regional Ed. Ass'n v. Red Bank Regional High School Board of Education*, 376 A.2d 1325 (N.J. Super. 1977) ............ 8

*State v. Born*, 159 N.W.2d 283 (1968) ............ 13

*State v. Davis*, 772 A.2d 559 (Conn. 2001) ............ 8

*State v. Fitzgerald*, 778 S.W.2d 689 (Mo.App. 1989) ............ 19

*State v. Gordon*, 778 P.2d 1204 (Ariz. 1989) ............ 13

*State v. Jacobs*, 301 S.E.2d 429 (N.C.App. 1983) ............ 13

*State v. Rawls*, 502 A.2d 374 (Conn. 1985) ............ 8

*State v. Rounds*, 160 A.2 49 (Vt. 1932) ............ 22

*State v. Tarmey*, 755 A.2d 482 (Me. 2000) ............ 8

*Weatherly v. State*, 733 P.2d 1331 (Ok. 1987) ............ 16

*W.S. Libbey Co. v. Johnson*, 94 A.2d 907 (Me. 1953) ............ 8

MISCELLANEOUS

*Annotation*, *Parts of the Human Body, Other Than Feet, as Deadly or Dangerous Weapons for Purposes of Statutes Aggravating Offenses Such as Assault and Robbery*, 8 A.L.R.4th 1268 (1981) ............ 13

Hoynak, Bryan, M.D., *Fractures, Wrist,* EMedicine, internet address: www.emedicine.com ............ 22n

*Merriam Webster's Collegiate Dictionary* (10th ed. 1999) ............ 19

## STATEMENT OF THE CASE

Mr. Bolarinho was charged with two counts of felony assault in violation of R.I.G.L. section 11-5-2. Count 1 of Information Number P2/01-0769 charged the defendant with felony assault by means of the provision elevating an assault or battery to a felony when the assault or battery results in serious bodily injury and Count 2 charged the defendant with felony assault by means of an assault with a dangerous weapon (to wit: a shod foot).

Defense counsel filed a Motion for Bill of Particulars inquiring as to the nature of serious bodily injury that the state intended to prove with respect to Count 1, and the manner in which the state alleged the defendant used his shoe as a dangerous weapon in Count 2. *(See Appendix, Motion.)* The motion was granted on September 6, 2001. The State responded that the serious bodily injury incurred by Louis J. Martin, Jr. is a broken right wrist and that the dangerous weapon referenced in Count Two was the defendant's feet. *(See Appendix, Answer.)* On November 19, 2001, defense counsel filed a Motion to Dismiss Count 2 of the Information on the grounds of double jeopardy as it "either merges with Count 1, or is a lesser included offense." *(See Appendix, Motion.)*

After trial without a jury before Justice Krause on April 9-10, 2002, Norberto Bolarinho was convicted of both counts of felony assault. On June 18, 2002, he was sentenced, on both counts, to twelve years (12) at the Adult Correctional Institutions (ACI), five (5) years to serve, the remainder suspended with probation. The sentences were ordered to be served concurrently. His motion for bail pending appeal was denied.

A timely notice of appeal was filed on June 21, 2002. The case was docketed in this Honorable Court on November 27, 2002, and, on January 29, 2003, Mr. Bolarinho

filed a motion with this Court for release on bail pending appeal. This Court denied that motion on June 3, 2003. This Court also denied Mr. Bolarinho's second motion for release on bail pending appeal. By order dated October 31, 2003, this Court both denied bail and granted Mr. Bolarinho's motion to accelerate the case. After a pre-briefing conference before the Hon. Donald F. Shea (Ret.) on November 21, 2003, this case was ordered to the full brief calendar.

## STATEMENT OF FACTS

At approximately 2:00 a.m. on September 10, 2000, Norberto Bolarinho rode his bicycle to the Martin residence on Vine Street in East Providence looking for his friend, Frank "Cookie" Martin. TR. 26. His knock at the door was answered by Jennifer Correira who was still awake. TR. 9-10. When she told Mr. Bolarinho that Cookie wasn't home, he left, heading back down the driveway towards his bicycle.

Cookie Martin's brother, Louis Martin, who was, at that time, a temporary house guest of his brother Cookie, was also awake in the house and sitting in the parlor. TR. 28. When Jennifer told Louis Martin that Mr. Bolarinho had been at the door, Martin got up from the parlor and left the house to confront him. TR. 10, 28.

Louis Martin yelled twice to Norberto Bolarinho to "get out of here, get the fuck out of here" twice. He yelled first from a distance of twenty-five or thirty feet, then, following Mr. Bolarinho down the driveway, got very close to him and yelled at him again, while pointing a finger in his face, to "get the fuck out of here." According to Martin's own testimony, he went after Norberto Bolarinho, got right in his face, and swore at him, telling him to leave the premises and that he was not welcome there. TR. 30-32.

Bolarinho, who was already leaving, responded to Martin's assault by throwing a punch at him. Martin testified that he threw a punch back. TR. 13. A fistfight ensued. According to Martin, Bolarinho started to hit and kick him, "throwing chops at him and doing twirl kicks." TR. 14. At some point Martin threw Norberto Bolarinho into the bushes.

After the two fought, Bolarinho got on his bicycle and left. TR. 18. Although Martin testified that Bolarinho hit him for about fifteen minutes, Jennifer Correira testified that Martin was only outside the house for about five minutes: "more than two, no more than five." TR. 65.

Martin did not call the police that night, nor did he seek medical attention. He went into the house and went to bed. The following day he woke up between 11:00 and 11:30 a.m. TR. 18-21. He testified that he knew his arm was broken.

After calling his primary care physician, Martin went to Rhode Island Hospital. He testified that his arm was treated with a soft cast which he wore for approximately twelve weeks. TR. 22-23. He told the emergency room physician that he injured himself when he tripped and fell while out walking a dog. TR. 39.

Louis Martin, who was fifty-four years old at the time of trial, testified that he had been collecting disability benefits since 1997 due to back injury and other ailments. The hospital x-rays revealed, and Martin admitted in his testimony that he had previously broken the same wrist many years before. TR. 23.[1] Although Martin testified that his wrist "has never been the same" since his fight with Mr. Bolarinho and that he still had to wear a cast because of the problems with his wrist, he did not wear the cast during his testimony or bring it to court. There was no evidence that Martin's wrist was treated subsequent to September 10, 2000.

1 Neither party sought the admission of hospital records which included an x-ray report revealing the existence of a remote healed fracture on the right wrist.

**I. <u>THE MULTIPLE PUNISHMENTS IMPOSED UPON NORBERTO BOLARINHO ON TWO COUNTS OF FELONY ASSAULT FOR THE SAME INCIDENT OF ASSAULT, WAS IMPROPER UNDER THE FELONY ASSAULT STATUTE AND VIOLATED MR. BOLARINHO'S STATE AND FEDERAL CONSTITUTIONAL PROTECTIONS AGAINST DOUBLE JEOPARDY. U.S. CONST. AMEND. V; R.I. CONST. ART. I, SECTION 7</u>.**

The double-jeopardy clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Art. I, section 7 of the Rhode Island Constitution similarly states that "[n]o person shall be subject for the same offense to be twice put in jeopardy." The guarantee against double jeopardy prohibits both successive prosecutions for the same offense as well as multiple punishments for the same offense. *Jones v. Thomas*, 491 U.S. 376, 381 (1988).

The felony assault statute provides for enhanced penalties when an assault is committed with a dangerous weapon **<u>or</u>** results in serious bodily injury. It was not until 1981, that the Rhode Island Legislature amended the definition of felony assault to include "an assault or battery which results in serious bodily injury . . ." R.I. Gen. Laws section 11-5-2(a) (1982). The statute previously had defined felony assault as assault with a dangerous weapon.

In *State v. Zangrilli*, 440 A.2d 710 (R.I. 1982), this Court considered whether an assault that occurred on January 26, 1979, prior to the amendment of the statute, constituted assault with a dangerous weapon. In *Zangrilli*, the victim was attacked by her ex-husband who grabbed her by the throat with his hands and strangled her until she could feel her eyes bulge. *Id.* at 711. The defendant told her he was going to ruin her face. She sustained a cut on the back of her head when she fell to the pantry floor, was

dragged through various rooms of the house, punched several times in the face and neck area and was shoved into the bathtub. *Id.* The victim's jaw was broken in two places and she suffered an acute lumbosacral strain of the back as a result of the assault. The police found blood on a bathroom wall, the bathtub, and the pantry area of the kitchen. The victim had blood on her face, hands, and the back of her head. One of her young children called the police for assistance. *Id.*

The defendant in *Zangrilli* was not charged with felony assault because he caused serious bodily injury because, at the time the offense was committed, assault resulting in serious bodily injury did not constitute felony assault. The defendant was charged with assault with a dangerous weapon. The Rhode Island Supreme Court considered whether the use of hands alone may constitute assault with a dangerous weapon. The Court held that an individual's hands, when employed in such a manner as to be likely to produce substantial bodily harm, may properly be qualified as a dangerous weapon.

If any object which is not inherently a dangerous weapon becomes a dangerous weapon when it is used in a manner such as to cause serious bodily injury, then any assault resulting in bodily injury is, by definition, an assault with a dangerous weapon even when the "dangerous weapon" is the hands, feet, or other bodily parts of the defendant. *See also State v. Gore*, 820 A.2d 978 (2003)(string is dangerous weapon when used in manner that could produce serious bodily injury). Therefore, as trial counsel argued, the charge of assault with a dangerous weapon when the "dangerous weapon" is defined by its capability of causing serious bodily injury, must always merge with the offense of assault resulting in serious bodily injury. There is no scenario in which there can be an assault resulting in serious bodily injury, which does not include all

the elements of assault with a dangerous weapon. Under the "same offense" test enunciated in *Blockburger v. United States*, 284 U.S. 399 (1932), the offense of assault with a dangerous weapon does not require proof of an additional fact which the offense of assault resulting in serious bodily injury does not, therefore, the charges for both offenses violate the double jeopardy provision barring multiple punishments for the same offense. Based on this Court's rulings, any assault that results in serious bodily injury constitutes assault with a dangerous weapon.

**A. <u>The Felony Assault Statute Does Not Contemplate Multiple Punishments For A Single Assault.</u>**

In this case, the state charged Mr. Bolarinho with two counts of felony assault. One count alleged that he has assaulted the victim with a dangerous weapon. The other count alleged that this same assault resulted in serious bodily injury to the victim. The felony assault statute, however, does not state that the various means of committing a felony assault are separate offenses; the felony assault statute simply defines conduct or circumstances that constitute felony assault. The use of the word "or" in defining the single offense of felony assault clearly indicates alternative ways in which the single offense can be committed.

Rhode Island General Laws section 11-37-2 provides that "(b) Every person who makes an assault, battery, or both, **with a dangerous weapon**, with acid or other dangerous substance, or by fire, **or** who makes an assault or battery **which results in serious bodily injury**, shall be punished by imprisonment for not more than twenty (20) years."

The statute, given its plain and ordinary meaning, does not turn the single offense of felony assault into multiple offenses simply by adding an alternative description of the

offense of felony assault. The use of disjunctive "or" in a statute is generally used to give an alternative description of something already identified. *W.S. Libbey Co. v. Johnson*, 94 A.2d 907 (Me. 1953). The use of the word "or" is generally indicative of a disjunctive alternative corresponding with "either." *Red Bank Regional Ed. Ass'n v. Red Bank Regional High School Board of Education*, 376 A.2d 1325 (N.J. Super. 1977).

When construing a criminal statute, courts must refrain from imposing criminal liability unless expressly provided by the legislature. *State v. Davis*, 772 A.2d 559 (Conn. 2001). In construing penal code provisions, issues should be resolved in favor of lenity and against turning a single transaction into multiple offenses unless there is a clear legislative intent to fix separate penalties for ***each alternative provision*** violating a statute. *State v. Rawls*, 502 A.2d 374 (Conn. 1985). A court may not interpret a penal statute so as to increase the severity of the penalty which it authorizes unless the legislature has unambiguously provided for the increased penalty. *DCX, Inc. v. District of Columbia Taxicab Commission*, 705 A.2d 1096 (D.C. 1998). In order to effectuate the legislature's intent, a court must look to the plain meaning of the language used in a statute, keeping in mind that a court must construe penal statutes strictly so that a criminal offense is not created by inference or implication. *State v. Tarmey*, 755 A.2d 482 (Me. 2000).

Although, the defendant argues that the two counts of felony assault merge under the test devised by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 399, 404 (1932), even when two offenses do not merge under the required evidence test, the court nonetheless may consider, as a principle of statutory construction, the rule of lenity which provides that doubt or ambiguity as to whether the legislature intended

that there be multiple punishments for the same act or transaction will be resolved against turning a single transaction into multiple offenses. *Holbrook v. State*, 772 A.2d 1240 (Md. 2001). In fact the rule of lenity expressly prohibits a court from interpreting a criminal statute to increase the penalty it places on a defendant when such interpretation can be based on no more than its guess as to what the legislature intended. *Gardner v. State*, 689 A.2d 610 (Md. 1997).

**B. <u>In The Absence Of Specific Legislative Authorization Of Multiple Punishments For A Single Criminal Act, Such Punishments Cannot Be Imposed Without Violating The Constitutional Protection Against Double Jeopardy</u>.**

In order for an accused to be punished for more than two crimes on the basis of a single criminal act, the legislature must express an explicit intention in that regard. In *Missouri v. Hunter*, 459 U.S. 359 (1983), the United States Supreme Court held that the Double Jeopardy Clause's prohibition of multiple punishments for the same offense does not prohibit the imposition, at a single trial, of cumulative convictions and punishments for two or more statutorily defined offenses that, while constituting the "same" crime under *Blockburger v. United States*, 284 U.S. 299 (1932), are specifically intended by the legislature to carry separate punishments. The two offenses involved in *Hunter* were first degree robbery and armed criminal action. *Hunter* turned explicitly on the fact that the Missouri legislature intended to create two different crimes and prescribe two penalties, one of which was specifically intended to be cumulative to the other. The Court's holding in *Hunter* was a narrow one, in which the intent of the legislature was acknowledged and not disputed.

> Where, as here, a legislature specifically authorizes cumulative punishment under two statutes . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial

> court or jury may impose cumulative punishment under such statutes in a single trial.

*Id.* at 368-69.

In *Ball v. United States*, 470 U.S. 856 (1985), the United States Supreme Court stated that a legislative body ordinarily does not intend to punish the same offense under two different statutes. In fact, the "assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the same offense under two different statutes." *Id.* at 861. In *Ball*, the defendant was convicted of two charges: (1) receiving a firearm shipped in interstate commerce; and (2) possessing that same firearm. *Id.* at 857-59. It was conceded that both counts rested on the same conduct. The *Ball* Court stated that, while the government could prosecute a defendant simultaneously for both offenses, the government could only convict and sentence a defendant for one. *Id.* at 861. The Court noted that proof of illegal receipt of a firearm necessarily includes proof of illegal possession of that weapon. *Id.* at 861-62. The only remedy consistent with congressional intent would be for the trial court to exercise its discretion to vacate one of the underlying convictions. The fact that the sentences are ordered to be served concurrently does not render the unlawful conviction valid.[2]

Although the legislature is free to punish the same crime under two or more statutes, penal statutes ought to be construed under the assumption that the legislature

[2] The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and carries a societal stigma. The second conviction, even if it results in no greater sentence, is an impermissible punishment. *Ball* at 864-65.

will specifically state that a second punishment for the same offense is in addition to the punishment incurred for violation of one statute.

This Court has held that a defendant cannot be twice punished for a single act of sexual penetration. In *State v. Barnes*, 559 A.2d 136 (R.I. 1989), the defendant was charged with twelve counts of first-degree sexual assault and six counts of an abominable and detestable crime against nature, for a total of eighteen charges. The evidence, however, proved that only thirteen sexual assaults occurred. Consequently, it was obvious that some, or all, of the actions that formed the basis of the abominable and detestable crimes against nature charges were the same acts that constituted the basis of the first-degree sexual assault charges. Barnes, convicted of all eighteen charges, appealed, arguing that his convictions of both the crimes against nature and first-degree sexual assault, because they were based on the same sexual acts, violated his constitutional protection against double jeopardy. This Court agreed and vacated his convictions for the abominable and detestable crime against nature. Similarly in *State v. Burgess*, 465 A.2d 204 (R.I. 1983) this Court's opinion notes that the state conceded that the Court should vacate the conviction of committing an abominable and detestable crime against nature because the conviction and the first-degree sexual assault conviction resulted from the same single act of forcible fellatio, thereby violating the double jeopardy clause.

### C. **<u>An Assault Which Results In Serious Bodily Injury Is, By Definition, An Assault With A Dangerous Weapon</u>.**

The "essential question" when an object which is not dangerous *per se* is alleged to be a dangerous weapon, is "whether the object, as used by the defendant, is capable of producing serious bodily harm." The Rhode Island Supreme Court has included, within

the definition of a dangerous weapon, an individual's hands "when employed in such a manner as to be likely to produce substantial bodily harm." *State v. Zangrilli*, 440 A.2d 710 (R.I. 1982). Under this test, any assault which does, in fact, cause substantial bodily harm is, by definition, an assault committed with a dangerous weapon even when the "weapon" involved are the bare hands or feet of the defendant. Under this test, a shod foot which does in fact cause serious bodily harm is, by definition, a dangerous weapon because the proof that it caused serious bodily harm proves the fact that it is capable of producing serious bodily harm. Any assault which causes serious bodily harm constitutes a felony assault within the meaning of the serious bodily injury section of the felony assault statute. Therefore, any assault which results in serious bodily harm constitutes assault with a dangerous weapon.

It is quite clearly a violation of the provisions of the double-jeopardy clause to charge the defendant with two offenses resulting from a single incident when the measure of whether a dangerous or deadly weapon was used is a function of the harm inflicted by the defendant. In other words, any assault which results in serious bodily injury will have been inflicted by a deadly weapon to the extent a defendant's hands and feet are characterized as deadly weapons for purposes of this statute. Therefore, a defendant who causes serious bodily injury will also be convicted of assault with a dangerous weapon, the elements of assault with a dangerous weapon having been defined as a lesser included offense of the assault resulting in serious bodily injury.

Other courts have employed this reasoning to conclude that their own felony assault statutes do not define body parts as dangerous weapons when their statutory scheme also enhances punishment for serious or substantial bodily injury. The Supreme

Court of Arizona considered this question in 1989, noting that the "overwhelming majority of other jurisdictions hold that body parts do not constitute deadly weapons or dangerous instruments." *State v. Gordon*, 778 P.2d 1204 (Ariz. 1989)(*citing Annotation, Parts of the Human Body, Other Than Feet, as Deadly or Dangerous Weapons for Purposes of Statutes Aggravating Offenses Such as Assault and Robbery*, 8 A.L.R.4th 1268 (1981)). The *Gordon* Court noted that cases in which states held that a body part did constitute a dangerous instrument were cases in which the victims sustained serious physical injury or death but did not have a statutory scheme that would enhance punishment for assault causing "serious bodily injury," even without use of a dangerous instrument or deadly weapon. *See Hollis v. State,* 417 So.2d 617 (Ala.Crim.App.1982)(man used fists to break ribs of 81-year-old mother); *State v. Jacobs*, 301 S.E.2d 429, 430 (N.C.App. 1983)(large 39-year-old male hit and seriously injured 60-year-old woman); *Kirkpatrick v. State,* 747 S.W.2d 521 (Tex.Ct.App.1988)(defendant strangled young child with hands and caused brain hemorrhage and death). *But see State v. Born*, 159 N.W.2d 283 (1968). In a footnote, the *Gordon* Court points to this Court's decision in *Zangrilli* as the only possible exception, noting that the Rhode Island Legislature amended the statute to include "serious bodily injury" in 1981. The *Gordon* Court observed that this Court, in *Zangrilli*,

> did not treat [*sic*] the statutory amendment even though it noted that the defendant may have caused 'substantial bodily harm.' 440 A.2d at 711-12. Rather, the court found him guilty of felony assault because his fists and feet were a 'dangerous weapon.' *Id.* at 712. The reason the court did not use the 'serious bodily injury' amendment to find the defendant guilty of felony assault is unclear. Perhaps the 1981 amendment did not apply to Zangrilli's case, which the court decided January 21, 1982. However, this conforms this case with the other cases the state cites that did not deal with statutes punishing 'serious bodily injury.'"

*Id.* at 1207 n.2. The *Gordon* Court decided that, because the Arizona statute increases the punishment for the crime if the defendant either uses a dangerous instrument or causes serious harm, no purpose exists for allowing the jury to find that body parts are dangerous instruments just because they caused serious bodily harm.[3]

The State contends for the first time on appeal that double jeopardy considerations are not implicated because each blow delivered by the defendant constituted a separate assault.[4] However, it is well-settled that an assault committed in a single continuous episode constitutes one offense and not a series of individually chargeable acts. *People v. Berner*, 42 Colo. App. 520, 600 P.2d 112 (1979)(defendant was convicted of two counts of assault when he delivered "two blows. . . .to the same person within a short period of time as part of a continuous harangue. . . ." *Held*: one conviction for assault set aside); and *Ex Parte Birl*, 545 S.W.2d 169 (Tex. Crim. App. 1977)(passage of a few seconds is not sufficient itself to interrupt a transaction as to allow carving of two or more offenses from an assault directed as a single victim). The fact that a criminal episode of assault involves several blows or wounds and different methods of administration does not convert it into a case of multiple crimes. *Id.* at 113.

---

[3] The State did not offer any evidence at all that the defendant wore footgear at the time of the assault. In many states, when the act of 'kicking' underlies the charge of assault with a 'dangerous weapon', "the shoe or boot, not the foot, is the object which is considered as the 'weapon' subjecting the assailant to a charge of aggravated assault." *Commonwealth v. Rumkin*, 773 N.E.2d 988, 55 Mass. App. 635 (2002). Without direct or circumstantial evidence that the defendant's feet were clad in anything resembling a shoe, "the state's proof on the aggravated aspect of the assault is entirely lacking." *Id.* at 992, 55 Mass. App. at 639.

[4] The State's response to the defendant's motion for Bill of Particulars did not charge each punch as a separate assault, nor did it identify any single blow as constituting the particular assault charged.

When the evidence establishes "a continuing course of assaultive conduct," rather than "a succession of detached incidents," the defendant is properly charged with only one count of assault. *Glymph v. United States*, 490 A.2d 1157, 1160 (D.C. 1985); *Gray v. United States*, 544 A.2d 1255, 1258 (D.C. 1988)("A continuing course of conduct may be found even though there has been some spatial or temporal separation between assaultive acts . . . or interruption by outsiders or actions by the participants themselves.."); *Owens v. United States*, 497 A.2d 1086, 1096 (D.C. 1985)(noting that certain offenses, like assault, "tend to be committed in a single continuous episode rather than in a series of individually chargeable acts"), *cert denied*, 474 U.S. 1086, 88 L.Ed.2d 900, 106 S.Ct. 861 (1986). Thus in *Glymph* the District of Columbia Court of Appeals held that the appellant, who had engaged in an hour-long argument with his girl friend during which he hit her several times, stuffed a washcloth in her mouth, threw her to the floor, and threatened her with a baseball bat, had committed only a single assault. 490 A.2d 1160-1161. *In re T.H.B. Appellant*, 670 A.2d 895, 900 (D.C. App. 1996). *Glymph*, as well as other cases concerning this issue, apply to felony assaults such as assault with a dangerous weapon.

In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180 (1932), the United States Supreme Court noted that the distinction is that "when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie." 284 U.S. at 302-303 (citation omitted). A continuing offense is "a transaction or series of acts set on foot by a single impulse, and operated by an unintermittent force, no matter how long it may occupy." *Estep v. State*, 11 Okl.Cr. 103,

143 p. 64, 66 (1914). Joyriding has been held by the United States Supreme Court to be a continuing crime, *Brown v. Ohio*, 432 U.S. at 169 (nine-day joyride constitutes single offense).

In *Weatherly v. State*, 733 P.2d 1331 (Ok. 1987), the Oklahoma Court of Criminal Appeals considered whether a defendant could properly be convicted of both assault with a deadly weapon and assault with intent to kill the same victim. The trial judge stated:

> Well, in my judgment – now, the evidence was that this defendant stabbing this girl forty times. In my opinion, each time he stuck that knife into the girl, he committed a separate assault. Now he was charged with only two of those . . . .

The Oklahoma Court of Appeals addressed the decision of the trial court as follows:

> We first note our disagreement with the analysis offered by the trial court, who indicates it was proper to charge and convict the appellant for two counts since technically he could have been charged with up to forty separate crimes. This rationale is contrary to that noted above. We agree with our brethren in Illinois, who reached this same issue in *People v. Wilson*, 93 Ill. App. 3d 395, 417 N.E.2d 146, 1747, 48 Ill. Dec. 744 (Ill. App. 1981), and noted:
>
>> The prosecution asserts, however, that each of the blows delivered by the defendant may serve as the basis for a separate offense of aggravated battery or attempt (murder). According to the argument, the defendant could have been convicted of and concurrently sentenced for numerous counts of aggravated battery and attempt (murder) judging from Glenda's injuries. Such suggestion is inane. Only a single defendant and single victim were involved. The offenses at issue, aggravated battery and attempt (murder) arose from a series of blows to the victim which were not separated by a significant amount of time.
>>
>> We find that the multiple blows delivered by the defendant to Glenda constituted a single offense. Accordingly, we affirm his conviction for attempt (murder) and vacate his conviction for aggravated battery.

The *Weatherly* court, while disagreeing with the rationale employed by the trial judge, found that the defendant in that case could be charged with both offenses because the convictions were based on separate and distinct acts. One attack occurred from behind while the victim stood near a desk and was stabbed in the shoulder, chest and abdomen. The defendant broke off the attack on her and she fainted. The second attack occurred after the victim regained consciousness and went to the telephone to call for help. She was then stabbed in the legs, chest and thighs.

In the case at bar, the evidence clearly points to the conclusion that the assault was a continuous course of conduct propelled by a single impulse. There was no interruption or separation that would justify charging the assault as two separate offenses.

## II. THE STATE'S EVIDENCE THAT THE VICTIM SUSTAINED SERIOUS BODILY INJURY WAS INSUFFICIENT AS A MATTER OF LAW TO CONSTITUTE PROOF BEYOND A REASONABLE DOUBT, THEREFORE THE TRIAL JUSTICE ERRED IN DENYING MR. BOLARINHO'S MOTION TO DISMISS THE CHARGE.

This case concerns interpretation of the "serious bodily injury" portion of the felony assault statute and whether the state met its burden of proof that the defendant "caused protracted loss or impairment of the function of any bodily part, member or organ"[5] when the injury sustained was a fractured wrist. The state did not offer evidence sufficient to sustain its burden of proof with respect to either of the following elements of the offense:

1. That the wrist fracture sustained by the victim was caused by the defendant;
2. That the wrist function was impaired or lost for a protracted period of time.

It is well-established that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068 (1970). A State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

---

[5] Rhode Island General Laws section 11-5-2, captioned "Felony Assault" states that: "(a) As used in this section, 'serious bodily injury' means physical injury that: (1) Creates a substantial risk of death; (2) **Causes protracted loss or impairment of the function of any bodily part, member or organ**; or (3) Causes serious permanent disfigurement or circumcises, excises, or infibulates the whole or any part of the labia majora, labia minora, or clitoris of a person." The statute provides further that: "(b) Every person **who makes an assault, battery, or both, with a dangerous weapon**, with acid or other dangerous substance, or by fire, **or who makes an assault or battery which results in**

**A. The State Did Not Offer Evidence Sufficient To Prove That The Condition Of Edward Martin's Wrist Constituted "Serious Bodily Injury" Within The Meaning Of The Statute.**

The only evidence offered by the state in support of its charge that Mr. Bolarinho caused serious bodily injury was the testimony of Edward Martin that his wrist had been broken by Mr. Bolarinho and that it hadn't been the same since. There was no other evidence regarding the nature of the injury sustained. The state did not proffer any medical evidence as to whether the condition of Mr. Martin's wrist constituted protracted loss or impairment.

The term "protracted" is defined as "prolonged in time or space," *Merriam Webster's Collegiate Dictionary* (10th ed. 1999), and what is considered "protracted" depends on the circumstances. *State v. Fitzgerald*, 778 S.W.2d 689 (Mo.App. 1989). "Protracted" is "something short of permanent, but more than of short duration." *Id.* at 692. In *Fitzgerald*, the court held that "while there is no set formula regarding what amount of time constitutes 'protracted,' we find that four weeks in the life of an infant is enough to constitute 'less than permanent but more than of short duration.'" Consequently, the broken arm of an eleven-month-old child was held to constitute "serious bodily injury."

Courts that have ruled on the question of whether a particular injury constitutes a serious injury within the meaning of an aggravated assault statute have done so on a case-by-case basis since it is extremely difficult to find precedent in which the victim suffered an identical injury. However, in numerous cases in which the evidence proved rather serious injury, such as a gunshot wound to the leg, *People v. Santos*, 556 NYS2d 376

---

**serious bodily injury**, shall be punished by imprisonment for not more than twenty (20)

(NY 1990), or a gunshot striking the collarbone, *Goans v. State*, 465 So.2d 482 (Ala. 1986), courts have held that proof of such injuries was not itself sufficient evidence to constitute "protracted loss or impairment of the function of a bodily organ" within the meaning of an aggravated assault statute. *People v. Nieves*, 526 NYS2d 954 (NY 1988)(gunshot wound to foot not serious bodily injury).

In *Grider v. State*, 766 So.2d 189 (Ala.Cr.App. 1999), the court ruled that there was insufficient evidence to support a conviction for aggravated assault when the weapon involved was a sandal and there was insufficient evidence to establish "serious physical injury" within the meaning of the statutory definition.[6] In *Grider*, the victim was dragged out to her car by her hair, pummeled with fists and feet, bitten and kicked. She sustained a broken clavicle and a broken nose. Troubled by the fact that this evidence was legally insufficient to constitute serious physical injury within the meaning of the statute, Baschab, J., concurring specially, urged the legislature to amend the statute defining felony assault by creating a new offense that would involve a less stringent definition of injury. Pointing to statutes in Washington and Mississippi which define proof of the requisite injury as "substantial bodily harm," the term, includes fractured or dislocated bones and other serious bodily injuries which have been held insufficient to constitute "serious physical injury."

In *Montana v. Andrews*, 907 P.2d 967 (Mont. 1995), the Supreme Court of Montana held that, while there was overwhelming evidence to establish that the

---

years."

[6] The statute at issue is identical in its definition of serious bodily injury, to the Rhode Island statute. The same definition of "serious physical injury" is also contained in the Michigan Revised Criminal Code section 135, the New York Revised Penal Law section

defendant caused mere bodily injury to the victim, a baby, by shaking her, there was no evidence that the injuries were life-threatening, or created a substantial risk of death. The State did not present evidence that the baby has protracted loss or impairment of the function or process of any bodily member or organ as a result of the shaking. Therefore, even reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found beyond a reasonable doubt that the defendant caused serious bodily injury.

Although it has been held that a victim who was stabbed in the thigh with a kitchen knife sustained no serious physical injury within the meaning of the aggravated assault statute nor did a victim cut in the chest and on the hand with a butcher knife. *Anderson v. State*, 686 So.2d 378 (Ala.Cr.App. 1994); *Ex parte Vaughn*, 495 So.2d 83, 84 (Ala. 1986), a broken wrist was held to constitute "serious physical injury" in *Clift v. Kentucky*, 2003 Ky. App. LEXIS 89 (May 2, 2003). In *Clift*, medical evidence at trial demonstrated that an eleven-month old child suffered a complete fracture of the humerus, and it took approximately four to six weeks for the fracture to heal. The baby had to wear a splint and sling for approximately four of those weeks and his mobility was significantly impaired during this period. The *Clift* Court held that a reasonable juror could find that the significant impairment of the use of an 11-month-old child's arm for a four-week period constitutes either "prolonged impairment of health" or "prolonged loss or impairment of the function of a bodily organ" and thus constitutes a "serious physical injury."

---

10.00, the Proposed Revision Texas Penal Code section 1.07, and the Proposed New Federal Criminal Code section 1.09.

In contrast, there was no medical evidence presented in the case at bar. It is unclear whether the injury to Martin's arm was a hairline fracture or a severe break.[7] There was no evidence offered to prove whether the injury prevented him from engaging in day to day chores or other employment.[8] There was no evidence with respect to follow-up treatment, if any, for the wrist fracture. Therefore, it is respectfully submitted, the state failed to sustain its burden of proving that Mr. Bolarinho caused protracted injury within the meaning of the statute.

**B. The State Failed To Present Legally Sufficient Evidence That The Wrist Fracture Was Caused By The Defendant.**

The State bears the burden of proving that the injury at issue was the proximate cause of the defendant's actions. The proximate relationship between the assault and the serious bodily injury must be proved beyond a reasonable doubt. The causal connection must be clearly established and cannot be supported on mere conjecture and speculation. *State v. Rounds*, 160 A.249 (Vt. 1932). A connection which is merely probable, between

---

[7] The hospital x-ray record, which was not introduced by the state as an exhibit at trial disclosed that the "comminuted intraarticular fracture involving the distal right radius" showed no significant displacement. Severity of a fracture is determined by the degree of displacement. The greater the degree of displacement, the more severe the injury. The x-ray also revealed that Edward Martin had previously fractured the same wrist, noting "there is a remote healed fracture involving the right ulnar styloid." Approximately 60% of distal radius fractures are associated with a fracture of the ulnar styloid. Hoynak, Bryan, M.D., *Fractures, Wrist*, EMedicine, internet address: world wide web, emedicine.com. Injuries to the ulnar styloid of the wrist invariably affect the distal right radius of the wrist because the fracture causes one bone to be longer than the other. Therefore, remote or old injuries do, over time, degenerate into more serious injuries without any second trauma or fracture. *Id.* Despite this fact, no medical evidence was introduced to sustain the state's burden that that Edward Martin's present wrist problem was the result of the defendant's assault.

[8] Since the defendant was already on disability and had not worked for several years prior to this incident, any injury to his wrist would not have affected his employment in any way.

the assault and resulting injury, requires acquittal of the charge. *People v. Brengard*, 191 N.E. 850 (N.Y. 1934).

Even in a civil case, where proof need be made by only a preponderate in favor of a party to sustain a civil verdict, evidence that a causal relation is possible is insufficient to establish the facts necessary to support the claim.

In this case, the state failed to produce any medical evidence whatsoever on the issue of causation. Martin admitted that his wrist had been broken prior to his fight with Mr. Bolarinho and the records from the hospital confirm that that was the case.

**C. <u>The Evidence Presented To Prove That Mr. Bolarinho Caused Serious Bodily Injury To Edward Martin Was Not Credible.</u>**

In ruling on a motion to dismiss in a criminal case tried without a jury, the trial justice acts as the factfinder. In that role, the trial justice does not simply draw all inferences in favor of the State, but is required to weigh the trial evidence and pass upon the credibility of witnesses. The trial justice is further required to engage in the inferential process impartially, drawing all reasonable inferences in favor of or against either party. After so doing, if the trial justice in a criminal case concludes that the trial evidence is not sufficient to establish guilt beyond a reasonable doubt, he or she grants the motion and dismisses the case. *State v. McKone*, 673 A.2d 1068 (R.I. 1996).

In this case, Edward Martin's testimony was the only evidence of the cause and severity of his wrist injury. It is respectfully submitted that the trial justice abused his discretion in finding that his testimony was credible.

First, Louis Martin did not report this assault to the police until the following day when it would have been more difficult for police to accurately assess the situation. Second, Martin told the emergency room physician that he hurt his wrist when he fell

while walking a dog. Third, Martin described his arm as being in the same condition the day after the fight, September 10, 2000, as it was at the time he testified on April 9, 2002. TR. 21-22. In fact, Martin testified, his wrist was even less swollen on September 10, 2000, than it was at the time of his testimony. TR. 21-22. The State did not offer any evidence to support Martin's contention that his wrist injury never healed or got better but instead became even more swollen.

Photographs of Martin's body taken by police shortly after the incident, however, demonstrated that there was no chest bruise where Martin said he was initially kicked. The police did not take any pictures of Martin's back, which indicates that Martin did not tell the police he was dragged or kicked in the back. TR. 73. Defense counsel argued that if there were injuries on Mr. Martin's back, the police would have taken pictures of them. The photographs revealed a bruise on the inside of Martin's left arm, however, Martin's testimony was that he was using this arm to protect his face and body from being hit, therefore, to corroborate Martin's testimony, the bruises should have been to the outside of Martin's left arm. TR. 73.

Defense counsel argued to the trial justice that Edward Martin's testimony regarding the condition of his wrist was not credible:

> Now, Mr. Martin indicated that his wrist was broken during this incident. He also indicated that he had had injury to the arm previously. He indicated now he still wears a brace. He didn't bring the brace in to show the Court. He also didn't – the State didn't present – [* * *] medical evidence. No medical testimony from the State corroborating his continued problem with his wrist. The State has not shown any evidence, any credible evidence, for the protracted loss of use, or impairment of function. Certainly no evidence of dismemberment, or disfigurement, either. And, most importantly, Your Honor, Mr. Martin testified that at least twice during this incident that he fell backwards. And, simply a natural fall backwards you use your hands to stop yourself from falling

> down. I would suggest to the Court that is the most likely place that injury came from.
>
> He testified that he was yelling during this entire altercation and that nobody responded. Just heard today from Jennifer Correira who was awake, who was coherent, who knew Louis went outside. She never heard any yelling or screaming or anything. In fact, she said she heard the dog barking, somebody knocked on the door and the dog started to bark.
>
> Now, other things to consider as far as Mr. Martin's credibility, when this first happened he went to the hospital. He lied to police, people at the hospital. He lied to the people treating him; tripped walking his dog because he was embarrassed. He also didn't tell a few things about the incident to the police. He didn't tell the police that he was dragged. He didn't tell police that he was stomped, or his arm was stomped on. He also didn't tell the police about how aggressive he was towards my client; that he covered the distance to my client he was yelling at him, to get in his face, basically started the fight. In fact, I think he tells the – told police he testified that he ran up and threw the first punch, apparently for no reason at all . . . TR. 73-75.

There were numerous inconsistencies between Martin's testimony and the testimony of the only other witness to part of the events related by Martin. Jennifer Correira testified, for example, that Martin was only outside the house for about five minutes: "more than two, no more than five." TR. 65. Louis Martin testified that he was yelling outside the house off and on for about ten or fifteen minutes. He testified that he was yelling for Bolarinho to leave for awhile, then he was yelling for help. TR. 37. Some of the windows in the house were open and Jennifer was awake, yet she never heard any yelling. TR. 38. Neither of the two girls sleeping upstairs, Martin's teenage daughter and Jennifer Correira's daughter, was awakened by the yelling. TR. 37-39.

In light of the above, it is respectfully submitted that the trial justice was clearly wrong in finding that Louis Martin's testimony was credible and legally sufficient to establish the offenses charged.

## CONCLUSION

For the reasons stated, and for those that may arise on oral argument, Mr. Bolarinho respectfully prays that this Honorable Court sustain his appeal, vacate the judgment of conviction, and remand this case for proceedings consistent therewith.

Respectfully submitted,

NORBERTO BOLARINHO

By His Attorneys

JOHN J. HARDIMAN, Reg. #2792
Public Defender

PAULA ROSIN, Reg. #1871
Chief Appellate Attorney

PAULA LYNCH, Reg. #3548
Assistant Public Defender
Appellate Division

Office of the Public Defender
100 North Main Street
Providence, RI 02903
(401) 222-1510

**CERTIFICATION**

I hereby certify that on this day of December 2003, I served a true copy of the within upon the Department of the Attorney General by depositing a copy of same in the box reserved for that purpose in the office of the Clerk of the Supreme Court of Rhode Island, at 250 Benefit Street in Providence, Rhode Island 02903.

______________________________