# TABLE OF CONTENTS


PAGE

TABLE OF AUTHORITIES CITED ........ ii

RELEVANT TRAVEL ........ 1

STATEMENT OF RELEVANT FACTS ........ 2

ISSUES ON APPEAL ........ 5

1. THE DOUBLE JEOPARDY CONTENTION ........ 5

2. THE ALLEGED INSUFFICIENCY OF THE EVIDENCE AS TO COUNT ONE ........ 10

CONCLUSION ........ 15

CERTIFICATE OF SERVICE ........ 15

## TABLE OF AUTHORITIES

**PAGE**

**CONSTITUTIONS, STATUTES, AND RULES:**

U.S. Const. Amend. V .......... 5

R.I. Const., art. 1, sec. 7 .......... 5

G.L. 1956 (2002 Reenactment) § 11-5-2 .......... 1

G.L. 1956 (2002 Reenactment) §11-5-2(a) .......... 1

**UNITED STATES SUPREME COURT CASES:**

Bell v. United States, 349 U.S. 81 (1955) .......... 9

Blockburger v. United States, 284 U.S. 299 (1932) .......... 6,9

Sanabria v. United States, 437 U.S. 54 (1978) .......... 9

**UNITED STATES COURT OF APPEALS CASES:**

Smith v. United States, 418 F.2d 1120 (U.S.App.D.C. 1969) .......... 8

United States v. Dixon, 273 F.3d 636 (5th Cir. 2001) .......... 9

United States v. Petitjean, 883 F.2d 1341 (7th Cir. 2002) .......... 10

United States v. Thompson, 624 F.2d 740 (5th Cir. 1980) .......... 9

United States v. Weathers, 186 F.3d 948 (D.C. Cir. 1999) .......... 9

**STATE OF RHODE ISLAND CASES:**

State v. Barnes, 559 A.2d 136 (R.I. 1989) .......... 5,6,7

State v. Burgess, 465 A.2d 204 (R.I. 1983) .......... 5,7

State v. Champagne, 668 A.2d 311 (R.I. 1995) .......... 11

State v. Cipriano, 430 A.2d 1258 (R.I. 1981) .......... 8

State v. McKone, 673 A.2d 1068 (R.I. 1996) .......... 11

State v. Mollicone, 654 A.2d 321 (R.I. 1995) .......... 9

State v. Purro, 593 A.2d 450 (R.I. 1991) .......... 7,8

State v. Rodriguez, 882 A.2d 894 (R.I. 2003) .......... 9

State v. Silvia, 798 A.2d 419 (R.I. 2002) .......... 11,13

**CASES FROM OTHER JURISDICTIONS:**

Commonwealth v. Sullivan, 482 N.E.2d 1198 (Mass. Ct. App. 1985) .......... 8

In re T.H.B., Appellant, 670 A.2d 895 (D.C. 1996) .......... 7,8

Owens v. State, 497 A.2d 1086 (D.C. 1985) .......... 8

People v. Berner, 600 P.2d 112 (Colo. Ct. App. 1979) .......... 8

People v. Crespo, 788 N.E.2d 1117(Ill. 2003) .......... 8,10

People v. Wilson, 417 N.E.2d 146 (Ill. App. Ct. 1981) .......... 8

Purdey v. State, 50 Tex.Crim. 318, 97 S.W. 480 (1906) .......... 8

State v. Carol M.D., 542 N.W.2d 476 (Wis.Ct. App. 1995) .......... 9

State v. Perrillo, 649 A.2d 1031 (Vt. 1994) .......... 8

State v. Rummer, 432 S.E.2d 39 (W. Va. 1993) .......... 8

Weatherly v. State, 733 P.2d 1331 (Okla. Crim. App. 1987) .......... 8

## RELEVANT TRAVEL

Information P2/01-0769A charged Noberto Bolarinho ("defendant") with having committed, against fifty-two year-old Louis Martin, two counts of felony assault (G.L. 1956 (2002 Reenactment) § 11-5-2), the first "result[ing] in serious bodily injury" (§ 11-5-2(a)), the second by means of "a dangerous weapon" (*id.*), that being a "shod foot". (*See Criminal Information P2/01-0769A,* the defendant's *Motion for Bill of Particulars*, and the *State's Answer to Defendant's Motion for a Bill of Particulars*, all included in the *Appendix of the State of Rhode Island.*) Following an April 2002 jury-waived trial (Tr. 1-3) in the Providence County Superior Court before Justice Robert Krause, defendant was convicted of both these offenses, and sentenced, on June 18, 2002, to concurrent twelve-year terms at the Adult Correctional Institutions, the first five years to serve, the balance suspended for a seven-year probationary period. (Tr. 120-21.)[1]

---

[1] In so sentencing defendant, Justice Krause noted defendant's assaultive disposition, his rather extensive criminal record, his "demonstrate[d] *** [dis]regard for the civilized norms of[] society", and his recidivist tendencies. (Tr. 119-20.) The trial justice, as well, denied, on the basis of his assessment that defendant had "clear[ly] lied" when he took the stand at trial (Tr. 121), defendant's motion for bail pending appeal (*id.*); and this Court has subsequently twice denied a motion for bail pending appeal filed by defendant. (*See Orders* in appeal number C.A. 02-690.)

## STATEMENT OF RELEVANT FACTS

In the early morning hours of September 10, 2000, defendant, seeking cocaine, rode his bicycle to Louis Martin's brother's home, situated at 52 Vine Street in the City of East Providence. (Tr.11.) When Louis, who had been living on-and-off with his brother since 1998, went outside and told defendant that his brother, Francis or "Cookie", was not home and to get out because he was not welcome there, defendant started to attack the fifty-two year-old Martin. (Tr. 11, 13.) In addition to punching Martin, defendant also assaulted him with "chops" and "twirl kicks". (Tr. 14.) Even after Louis fell to the ground and was trying to protect his head and face with his arms, defendant kept kicking and stepping on Martin.[2] (Tr. 15.)

According to Mr. Martin, the pummeling lasted for approximately ten minutes[3] and for that whole period of time "He [defendant] was kicking me on the face; kicking me in the chest and in back; stepping on me." (Tr. 16.) Defendant kicked him "[m]any times. I can't put a number on it." (Tr. 17.) After a while, he wasn't saying anything to defendant but was yelling for help because "I know he is just going to give me an ass whipping, so to speak." (Tr. 17.) Finally, somebody came out of their house and defendant left Martin bleeding from his head, eyes and mouth. (Tr. 18.) Mr. Martin

---

[2] Jennifer Correia, who rented a room from Francis at the house on Vine Street, testified that she responded to the knock on the door at 2 a.m. by looking out the window and calling for Louis to answer the door since it was not for her. (Tr. 58.) Louis then went outside and the next thing she knew he was coming back in the house and his "face was all banged up. His arm was swollen." (Tr. 58.) She also testified that Louis seemed to be in shock and that he told her "Norman [Noberto] beat me up" with "some kind of karate chops". (Tr. 60.)

[3] Correia estimated that Martin was outside for approximately five minutes. (Tr. 58.)

suffered a broken wrist from the attack and testified that it has never been the same since the beating. (Tr. 23.)

Bolarinho voluntarily gave a statement to the police following his arrest three days later. The September 13, 2000 statement (included in the *Appendix of the State of Rhode Island*) was introduced as a full exhibit at trial (Tr. 51), and in it, defendant acknowledged that, after having gone to a bar on the evening of September 10, 2000, he did go to Cookie's house in the early morning hours to get cocaine, but maintained that Louis, after having told him to leave, struck him first. Defendant then proceeded to recount his response.

> Right after Cookie's brother hit me and I fell I got up and I snapped. I gave Cookie's brother a beaten [sic]. I beat his ass. I gave him a beaten that he will never forget.
> I punched him kicked him. I knocked him out. I knock out all my victims. I dropped Cookies brother like bad habit. After I gave him the beaten of his life I left him laying there in the drive. He tried to get up but I kicked him in the shoulder and [he] went to the ground again.

(Tr. 51.)

At trial, defendant maintained that his actions were purely in self defense, that he is not a violent person, but rather "verbally conversate[s]" to solve his problems. (Tr. 86.) He also claimed that his statement to police was "a little sarcastic".[4] (Tr. 85.) Defendant further testified that Mr. Martin was already out in the driveway when he arrived at the house and he never even got the chance to go to the door to ask about the cocaine before Louis started attacking him. (Tr. 88.) Defendant offered as a motive a prior drug dispute and that "little people" do not like him. (Tr. 93.) When asked about

---

[4] Detective Rossi testified in the State's case that defendant did not appear to be joking or laughing when he gave his statement, but was simply describing the whole event in a matter-of-fact, albeit colorful, manner. (Tr. 53.)

his previous statement regarding the fact that he "snapped", defendant attempted to clarify.

> just Did I snap? I stated I snapped on the record, on the statement, right. But I didn't snap to a point where I went ballistic, catastrophic. Picked up my bike, slapped on top of his face after I whacked him around a couple of times; grabbed him by the hair; stomping to the ground; get my foot; stomped him again on my – I whack, "you're all done. Later."

(Tr. 94.)

Defendant, as well during his testimony, demonstrated some of his moves in the courtroom, which the prosecutor described for the record: "defendant jumped, took his right foot, extended it completely forward. His left foot – with a foot off the ground, two arms up in the air, as if out to each side holding his balance." (Tr. 97.) And the trial justice commented on this demonstration: "The record will reflect that what the witness just demonstrated to me looked like every person I ever saw in Karate, Judo films." (Tr. 97.)

Such other relevant facts, germane to the two issues raised on appeal, will be referenced in the following discussion of the issues.

## ISSUES ON APPEAL

Defendant raised two issues on appeal: He contends first that, based on principles of "double jeopardy", he should not have been prosecuted, let alone convicted, of both of the assault counts charged in the information. (*Brief of Defendant* at 5-17.) Second, he argues that the evidence presented by the State at trial was legally insufficient to have convicted him of the first of those counts (count one, assault resulting-in-serious-bodily-injury). (*Brief of Defendant* at 18-25.)

## 1. THE DOUBLE JEOPARDY CONTENTION

Defendant's argument below appeared to be that he had committed only one "act" and thus, under the double jeopardy clause,[5] could not properly have been convicted of the two felony assault offenses, felony assault resulting in serious bodily injury, and felony assault by means of a dangerous weapon. (*See* Defendant's November 12, 2001 *Motion to Dismiss* "Count 2 of the *** information on the grounds of double jeopardy as it either merges with Count 1, or is a lesser included offense [of it]")(included in the *Appendix of the State of Rhode Island*), and defendant's reassertion of this argument at the close of all the evidence (Tr. 103 ("relating back to the motion to dismiss earlier, *** I think the evidence shows that those two charges should merge. If, in fact, injury results of the ADW those two charges do merge").) *See* State v. Burgess, 465 A.2d 204, 205 (R.I. 1983)("The state concedes that we should vacate the conviction of committing an abominable and detestable crime against nature because this conviction and the first-

[5] "The Fifth Amendment to the United States Constitution and article I, section 7, of the Rhode Island Constitution protect a criminal defendant from multiple prosecutions for the same offense." State v. Barnes, 559 A.2d 136, 142 (R.I. 1989).

degree sexual-assault conviction result from the same forcible-fellatio offense, thereby violating the double-jeopardy clause"); State v. Barnes, 559 A.2d 136,142-43 (R.I. 1989)(double jeopardy clause prohibited first-degree sexual assault and abominable and detestable crime against nature convictions, as both charges arose from same act of forced sexual penetration). In rejecting defendant's motion to "merge" the two felony assault counts into one (Tr. 103), the trial justice noted that each offense (felony assault resulting in serious bodily injury, and felony assault by means of a dangerous weapon), having an element which the other offense lacked, was distinct. (Tr. 103.)[6] It would of course be unreasonable to interpret Justice Krause's rejection of defendant's argument to mean that because assault-with-a-dangerous weapon felony assault and assault-resulting-in-serious-bodily-injury felony assault are "distinct" offenses under Blockburger v. United States, 284 U.S. 299, 304 (1932)(holding the "applicable rule [to be] *** that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not"), defendant

[6] The trial justice stated:

> Well, let me just address the issue as to whether there is a merger and that somehow your client is exposed to double jeopardy between the two charges. He is not. There is no double jeopardy involved. The Blockburger charges are different from one another by way of the specific elements required for the ADW charge. There's no requirement, nor is the State obliged to prove, that an actual battery took place; whereas, the other charge requires that a battery take place and that serious bodily injury flow from it. They are different from one another. And, to the extent you claim that they should merge, that motion is denied.

(Tr. 103-04.)

could permissibly be convicted of both types of felony assault, notwithstanding that they were based on a *single* act. Such proposition runs counter to elemental double-jeopardy jurisprudence, and this Court's application of such jurisprudence in cases such as State v. Burgess, 465 A.2d at 205, and State v. Barnes, 559 A.2d at 142-43. The only reasonable interpretation, then, of the veteran trial justice's rejection of defendant's double-jeopardy "merger" argument below, is that, because – as two *separate* acts of felony assault occurred – two felony assault convictions (one for resulting in serious bodily injury, another committed with a dangerous weapon) could properly obtain. As (now retired) Chief Justice Weisberger stated for the Court a number of years ago in rejecting defendant's claim in State v. Purro, 593 A.2d 450, 451-52 (R.I. 1991), "that the trial justice's refusal to dismiss one of the two counts of first-degree sexual assault as duplicitous constituted reversible error" (*id.*):

> The state could conceivably have brought a separate charge for each of the hundreds of assaults that allegedly occurred before [the victim's] thirteenth birthday. Unlike the situation in Barnes, where several single penetrations constituted the basis for two separate charges, the state showed restraint in the instant case by charging Purro with three counts of sexual assault in light of [the victim's] testimony that hundreds of separate acts of penetration had occurred. *** Purro is not twice placed in jeopardy for the same offense since the charges are based on two separate acts.

(State v. Purro, 593 A.2d at 452.)

And, while recognizing the existence of decisions (hailing in disproportionately large measure from the District of Columbia) holding that "when the evidence establishes a continuing course of assaultive conduct, rather than a succession of detached incidents, the defendant is properly charged with only one count of assault" (In re T.H.B.,

Appellant, 670 A.2d 895, 900 (D.C. 1996)(internal quotation and citation omitted))[7], the more contemporary and, the State would argue, better view would appear to be in line with the view articulated in Purro, that each separate act of assault, even in the course of continuing criminal conduct, may support a separate assault charge and conviction. *See* People v. Crespo, 788 N.E.2d 1117, 1121-23 (Ill. 2003)(reiterating previous holding that "separate blows, although closely related, constituted separate acts which could properly support multiple convictions with concurrent sentences", and that "[e]ach separate blow of a mop handle could support a separate conviction and that this remains a valid proposition of law."); State v. Rummer, 432 S.E.2d 39, 49-50 (W. Va. 1993)(following comprehensive double-jeopardy examination and demonstration as to why, in the sexual assault context, each act may properly support another offense, court criticizes decisions

[7] *See also* State v. Perrillo, 649 A.2d 1031, 1032 (Vt. 1994)("In battery cases, multiple blows during one fight or attack usually constitute only a single offense", *citing* to the intermediate appellate court cases of People v. Berner, 600 P.2d 112, 113 (Colo. Ct. App. 1979), and People v. Wilson, 417 N.E.2d 146, 147 (Ill. App. Ct. 1981)); Weatherly v. State, 733 P.2d 1331, 1336-38 (Okla. Crim. App. 1987)(at least where there is no intervening break in attack, separate charges may not lie for various assaultive acts committed within course of attack); Owens v. State, 497 A.2d 1086, 1096 (D.C. 1985)(assault by its "very nature" "tend[s] to be committed in a single continuous episode rather than in a series of individually chargeable acts. *** The fact that a criminal episode of assault involves several blows or wounds, and different methods of administration, does not convert it into a case of multiple crimes for purposes of sentencing")(internal quotations omitted); Smith v. United States, 418 F.2d 1120, 1121 (D.C. Cir. 1969)(same); Commonwealth v. Sullivan, 482 N.E.2d 1198, 1203 (Mass. Ct. App. 1985)("We think *** that the sequence of the blows was so close that as a matter of fact and sense the acts involved were so intertwined as to be one"); and, interestingly, perhaps this Court's dicta in State v. Cipriano, 430 A.2d 1258, 1261 n. 4 (R.I. 1981)("We disagree with defendant's approach of distinguishing the individual bullets fired into Mr. Granata. A person who inflicts more than one wound on the person assaulted by him is not subject to a charge of committing several assaults, but only a single assault. Purdey v. State, 50 Tex.Crim. 318, 319, 97 S.W. 480, 480 (1906). Here a single assault (the firing of three bullets into Granata) resulted in Granata's death and gave rise to the murder charge").

which have "conclude[d] without any detailed analysis that multiple blows struck during the same battery are not separate crimes").

It can readily be understood, then, the State respectfully submits, why the trial justice denied the double-jeopardy "merger" argument made below: because one (or a number of) act(s) of defendant might have supported count one (felony assault resulting in serious bodily injury), while a separate act of defendant might have supported the second, assault with a dangerous weapon, charge, the distinct assaultive acts obviously did not "merge".[8] But because, however, as noted in the *Brief in Chief of Defendant* at p.

---

[8] For the first time on appeal, defendant seems to be making another argument altogether: that even assuming separate acts on the part of defendant, the two counts are multiplicitous ("'multiplicity' refers to the practice of charging the commission of a single offense in several counts[, a] practice prohibited because a single wrongful act cannot furnish a basis for more than one criminal prosecution" (State v. Mollicone, 654 A.2d 321 (R.I. 1995)(internal citation and quotation omitted)) because the General Assembly intended that they be brought as a single count. (*Brief of Defendant* at 8-14.) This multiplicity argument – that even if the charge of felony assault resulting in serious bodily injury and felony assault committed by means of a dangerous weapon *were* based on distinct acts, the legislature intended that such various ways of committing felony assault constitute only "a single offense" (*Brief of Defendant* at 7) – is not an argument under the double jeopardy clause at all. (*See* State v. Carol M.D., 542 N.W.2d 476, 479 n. 3 (Wis. Ct. App. 1995)(only multiplicitous charges that are "identical in law and fact" implicate the double jeopardy clause; those that are multiplicitous because "the legislature intended them to be brought as a single count" do not, as such multiplicity is "impermissible [only] because they contravene the intent of the Legislature").) It concerns, rather, the question, of what "unit(s) of prosecution" the legislature intended to allow. (*See* United States v. Weathers, 186 F.3d 948, 952 (D.C. Cir. 1999)("Where two violations of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved not by applying the Blockburger test, but rather by asking what act the legislature intended as the 'unit of prosecution' under the statute", *citing* Sanabria v. United States, 437 U.S. 54, 70 n. 24 (1978), and Bell v. United States, 349 U.S. 81 (1955)); United States v. Thompson, 624 F.2d 740 (5th Cir. 1980)(discussing doctrine); United States v. Dixon, 273 F.3d 636, 642-43 (5th Cir. 2001)(discussing proper "unit of prosecution" under challenged statute).) Defendant, then, having failed to articulate, let alone raise, this non double-jeopardy multiplicity contention in the trial court, should not be permitted to do so on appeal for the first time. (*See e.g.* State v. Rodriguez, 882 A.2d 894, 901 (R.I. 2003)("Claims of error are deemed waived unless the specific grounds for the claimed error are effectively raised at

14, n. 4, the State apparently did not identify or differentiate between which particular act or acts constituted the felony assault resulting in serious bodily injury and the act which constituted the felony assault by means of a dangerous weapon, the State – recognizing at least the possibility that one of the acts constituting the felony assault resulting in serious bodily injury could also have been an act constituting the felony assault by means of a dangerous weapon – has come to appreciate that the best legal and equitable disposition of the cause might be to simply acquiesce to defendant's double jeopardy prayer that one of the two felony-assault convictions be set aside. (*Cf.* People v. Crespo, 788 N.E.2d at 1122-23 (while the State at trial could certainly have apportioned the various stab wounds to the various charged counts, because "[t]he State made no attempt *** to apportion these crimes among the stab wounds, *** it is improper for this court to do so now on appeal").)

**2. THE ALLEGED INSUFFICIENCY OF THE EVIDENCE AS TO COUNT ONE**

Acquiescing to the setting aside of one or the other of the defendant's two felony assault convictions, the State will only briefly counter (by reiteration of the argument made in its *Pre-briefing Statement*) defendant's second, and final, appellate contention, *viz.*, that the trial justice erred by not dismissing at the close of the case, on insufficiency of the evidence grounds, the first felony assault (resulting in serious bodily injury) charge.

> In a case tried *without a jury*, a totally different rule of review on the appropriate motion to dismiss comes into play. The trial justice, in ruling upon that motion, acts as the factfinder. In that role, when

---

trial")(internal citation and quotation omitted); *Cf.* United State v. Petitjean, 883 F.2d 1341, 1344 (7th Cir. 2002)(objections to multiplicity are insufficient to preserve subsequent claim of duplicity).)

> passing upon the motion to dismiss, he or she is required to weig' and evaluate the trial evidence, pass upon the credibility of the tri witnesses, and engage in the inferential process, impartially, .. being required to view the inferences in favor of the nonmoving party, and against the moving party. After so doing, if the trial justice in a criminal case setting concludes that the trial evidence is sufficient to establish guilt beyond a reasonable doubt, he or she denies the defendant's motion to dismiss and, if both sides have rested, enters decision and judgment of conviction thereon.

(State v. McKone, 673 A.2d 1068 (R.I. 1996)(emphasis in original).)

When reviewing that decision on appeal, this Court will not disturb the trial justice's ruling unless convinced that he or she overlooked or misconceived relevant and material trial evidence. *Id.* The trial justice's factual findings and credibility determinations are viewed deferentially and entitled to great weight. *Id. See also* State v. Silvia, 798 A.2d 419, 424 (R.I. 2002) *and* State v. Champagne, 668 A.2d 311, 313 (R.I. 1995).

The trial justice properly applied this standard when deciding defendant's motion to dismiss. (Tr. 80.) In denying the motion, the trial justice stated:

> I have no question in my mind, and I'm absolutely convinced, that the sustained beating and kicking that was described by the complaining witness was, in fact, a description of the defendant using his feet, particularly shod foot, as described in a manner that undoubtedly could have or might have caused serious bodily injury. And, frankly, I'm willing to go the other extra step on the evidence before me, because I'm satisfied that the kicking and so forth did, in fact, cause serious bodily injury, and the count alleging assault and battery resulting in serious bodily injury is also sustained and caused, as the complaining witness pointed out, that he was in a cast for twelve weeks, some three months, and that his wrist is still not functioning in a proper way. This is, in my mind, a prolonged and protracted injury and satisfies the statute.

(Tr. I, 81.)

In light of the testimony of Louis Martin, Correia, and Detective Ros… the statements of defendant himself, the trial justice's decision was supported … record. The testimony and statements of Mr. Martin and defendant have been discussed in the statement of facts, above. In addition to those descriptions of the severe beating sustained by the victim, he testified that after the fight he put some ice on his wrist and fell asleep. (Tr. 21.) When he awoke the next day, however, Mr. Martin testified that he "was in excruciating pain. I had a black eye at the time; my mouth was busted up. I had a bruise mark on my chest, injuries on my back, my upper chest" (Tr. 21), and when asked about his arm, he testified "My arm was broke. I knew it was" (Tr. 21). Louis Martin's primary care physician, Dr. James Myers, advised him to go to the Rhode Island Hospital emergency room, where he was treated and sent home with a soft cast that he wore for twelve weeks and occasionally still wore at the time of trial because "I have problems with my wrist." (Tr. 23.) When asked if he had been able to use his wrist and if had been the same since the attack, he stated "No, it's not one hundred percent never been" … "too many blows". (Tr. 23.)

Detective John Rossi testified that the first time he saw Louis "He had some sort of cast on his arm, and he had a black eye." (Tr. 41.) Jennifer Correia testified that when she called for Louis to tell him there was somebody at the door, he was in fine shape. (Tr. 58.) However, when he came back inside approximately five minutes later, "His face was all banged up. His arm is swollen." (Tr. 59.) "It was – you can tell there was something wrong. It was swollen enough to notice." (Tr. 59.) In addition to his physical appearance, she noticed that he was upset and seemingly in shock when he told her "Norman beat me up." (Tr. 60.) The next morning, she noticed that Louis' arm was

"really bad". (Tr. 62.) "It was really swollen, and he had to go to the emergency room." (Tr. 62.) When once again describing the series of events that evening on cross-examination, Correia testified the she was "More in shock that it happened. I mean, he went outside, a few minutes later came back in he is beat to a pulp." (Tr. 67.)

Moreover, in addition to finding the state's witnesses credible, the trial justice explicitly rejected the self-serving statements of defendant:

> I'm absolutely convinced, as I was at the close of the state's case, that these two counts easily survive and that the state has proved, unquestionably in my mind—not simply beyond a reasonable doubt, but beyond all doubt, and beyond peradventure – that your client is absolutely responsible, criminally so, for the charges that have been filed against him. I summarily reject the self-serving statement that he was attacked by Mr. Martin in the driveway and that he somehow was simply defending himself. The statements that he gave to Det. Rossi, with his conclusion that what he had somehow given Rossi were nothing more than bravado, I reject that out of hand. I don't believe your client.

(Tr. 104.)

The trial justice went on to state:

> In fact, in the fifteen years I have been sitting here your client strikes me as being one of the most obvious and deliberate prevaricators I have ever seen or listened to. I believe not a word of what he said. I think that which is contained in the statement is absolutely the truth. I think he absolutely, purposefully said it the way he said it, and that he was not puffing; it was not exaggeration. I think it was exactly the way he described it. And, based upon Mr. Martin's testimony and the injury he sustained, that it was absolutely your client's intention to do what he said he did in the statement, namely to "give him the beating of his life."

(Tr. 104-5.)

The trial justice, then, quite carefully and thoroughly reviewed the evidence, evaluated the credibility of the witnesses and drew appropriate reasonable inferences. *See* State v. Silvia, 798 A.2d at 426. He did not overlook or misconceive evidence, as is

suggested by defendant, and his denial of the motion to dismiss was therefore not in error.

## CONCLUSION

For the reasons expressed above, and for those that may be advanced during the oral argument of the within cause, the State would not be opposed to the vacation of one or the other of defendant's two felony assault convictions.

Respectfully Submitted,

**STATE OF RHODE ISLAND**
By Its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

**Aaron L. Weisman , #4438**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2004, I served a copy of the within upon defendant's appellate counsel by depositing a copy of same in the box reserved for the Public Defender in the office of the Clerk of the Supreme Court of Rhode Island, at 250 Benefit Street, Providence, Rhode Island.